IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PARTRICIA J. CARTER,<br><br>        Plaintiff,<br><br>vs.<br><br>DOUGLAS COUNTY, NEBRASKA, a Political Subdivision; and JOHN EWING, in his official and individual capacity,<br><br>        Defendants. | 8:22-CV-422<br><br>MEMORANDUM AND ORDER ON MOTION FOR PARTIAL DISMISSAL |

## I.    INTRODUCTION

Patricia J. Carter has sued Douglas County, Nebraska, and John Ewing, the Douglas County Treasurer, for violating Title VII of the Civil Rights Act of 1964, the Nebraska Fair Employment Practice Act, and the Equal Protection Clause of the Fourteenth Amendment. Filing 8. This matter is before the Court on Defendants' Motion for Partial Dismissal, which requests dismissal, with prejudice, of Carter's Equal Protection Claim. Filing 11. For the reasons stated herein, the Court grants Defendants' Motion.

## II.    BACKGROUND

In 2007, Douglas County, Nebraska hired Carter, an African American female, to work as the Senior Director of Accounting and Auditing. Filing 8 at 3. Douglas County Treasurer John Ewing, an African American male, was Carter's supervisor. Filing 8 at 3. During the first two years of employment, Carter claims that she received favorable performance reviews and, until 2021, her employment file had no written reprimands or discipline for unsatisfactory job performance. Filing 8 at 3–4, 9. In 2021, however, Carter's employment took a turn for the worse

1

when Ewing allegedly took actions against Carter that she claims were retaliatory and discriminatory. *See generally* Filing 8.

Beginning on February 19, 2021, Ewing allegedly placed Carter on a "Developmental Plan," which included 18 points for development and weekly follow-up meetings. Filing 8 at 4. According to Carter, she is the only Douglas County employee who has received a Developmental Plan "as an official course of adverse employment action." Filing 8 at 4. In response to the Developmental Plan, Carter filed an "Employee Complaint Questionnaire" with Douglas County on March 13, 2021, asserting that she received the Developmental Plan because of her race. Filing 8 at 4. After Douglas County received the questionnaire, Karen Buche, Douglas County's Director of Human Resources, assigned the questionnaire to an employee named Carol Donnelly to investigate. Filing 8 at 4.

While Donnelly investigated Carter's questionnaire, Carter submitted a Charge of Discrimination to the Equal Employment Opportunity Commission (EEOC) and the Nebraska Equal Opportunity Commission (NEOC) on March 19, 2021, charging Ewing with engaging in discriminatory conduct. Filing 8 at 4; Filing 8-1 at 5–6. That same day, Ewing drafted a "Supervisor Documentation of Employee Counseling," alleging that Carter has missed several deadlines, been disrespectful, and had not followed instructions for email communication. Filing 8 at 4–5. The document listed suggestions for Carter to improve. Filing 8 at 5.

Shortly after drafting the "Supervisor Documentation of Employee Counseling," Ewing issued a "Notice of Pre-Disciplinary Hearing" on March 22, 2021, alleging several deficiencies in Carter's work performance and seeking disciplinary action. Filing 8 at 6. Ewing directed Carter to attend Employee Assistance Program (EAP) counseling by March 26, 2021, as a requirement to

2

remain employed. Filing 8 at 6. Carter claims that being told to attend EAP counseling was the first corrective action she had received while working for Douglas County. Filing 8 at 6.

On March 26, 2021, Ewing issued a "Notice of Pre-Disciplinary Hearing," alleging several deficiencies in Carter's work performance and seeking disciplinary action. Filing 8 at 6. This prompted Carter to file another charge of discrimination with the EEOC and the NEOC on March 29, 2021, accusing Ewing of engaging in retaliation and discrimination. Filing 8 at 7; Filing 8-1 at 3. A few months later, on June 22, 2021, Carter met with Buche, the Human Resources Director, claiming that Ewing was retaliating against her. Filing 8 at 7.

Two days later, on June 24, 2021, Donnelly completed her investigation into Carter's complaints against Ewing. Filing 8 at 7. In her report, Donnelly found that Carter was not subjected to harassment, discrimination, or a hostile work environment. Filing 8 at 7. Carter alleges that the report does not mention her complaints of retaliation. Filing 8 at 7.

On July 14, 2021, Douglas County suspended Carter from employment, without pay, based on the allegations in Ewing's March 26 Notice of Pre-Disciplinary Hearing. Filing 8 at 7. Carter served a two-day suspension from July 19 to July 20, 2021. Filing 8 at 7.

On August 12, 2021, Ewing drafted another "Notice of Pre-Disciplinary Hearing," seeking Carter's termination from employment for several instances of alleged misconduct, including not submitting accurate reports, slamming doors, and not participating at meetings. Filing 8 at 7–8. The Amended Complaint alleges that Ewing identified his prior "Supervisor Documentation of Employee Counseling" form as an example of previous discipline. Filing 8 at 8–9. Carter takes issue with this characterization because the form allegedly states that it is not a disciplinary form and Ewing never previously using it as a disciplinary action. Filing 8 at 8–9.

3

On September 19, 2021, Douglas County terminated Carter's employment based on the allegations in Ewing's second Notice of Pre-Disciplinary Hearing.[1] Filing 8 at 9. On March 25, 2022, Carter filed a third Charge of Discrimination with the EEOC and the NEOC. Filing 8 at 9. Carter received a right-to-sue letter from these entities on September 17, 2022. Filing 8-1 at 1.

On December 8, 2022, Carter sued Douglas County and Ewing for retaliation under Title VII and the Nebraska Fair Employment Practice Act and for violating the Fourteenth Amendment's Equal Protection Clause. Filing 1 at 9–11. Carter filed the operative Amended Complaint on March 3, 2023. Filing 8. Defendants filed a Motion for Partial Dismissal aimed at the Equal Protection Claim on March 14, 2023. Filing 11.

### III. ANALYSIS

#### A. Rule 12(b)(6) Standards

The typical grounds for Rule 12(b)(6) motions are the insufficiency of the factual allegations offered to state claims. To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, "'threadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. Of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, as the Eighth Circuit Court of Appeals has explained, "A claim survives a Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a

---

[1] The Amended Complaint states that the termination letter sent to Carter lists the date of the "Supervisor Documentation of Employee Counseling" form as March 21, 2021, even though the form itself is dated March 19, 2021. Filing 8 at 9.

4

plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner,* 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). In contrast, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* (internal quotation marks and citations omitted). The Eighth Circuit Court of Appeals has cautioned that "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

In ruling on a Rule 12(b)(6) motion, a court must "accept 'the facts alleged in the complaint as true and draw[] all reasonable inferences in favor of the nonmovant.'" *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). On the other hand, "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). A court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021)

### B. Equal Protection Claim Against Douglas County

In Count III of the Amended Complaint, Carter brings a claim under the Fourteenth Amendment's Equal Protection Clause against Douglas County for having a policy or custom of

5

fostering a "race or sex discriminatory work environment" against African American women. Filing 8 at 12. In the alternative, Carter claims that the work environment resulted from a failure to train Douglas County employees. Filing 8 at 12. Douglas County argues, *inter alia*, that Carter has failed to plausibly plead the existence of any unconstitutional policy or custom or allege how Douglas County failed to train its employees. Filing 8 at 12. The Court agrees.

Local governing bodies, like Douglas County, cannot be held liable pursuant to 42 U.S.C. § 1983 for constitutional violations under a *respondeat superior* theory of liability. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Instead, local governing bodies may be sued directly under § 1983 for violating the constitution if the violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Leftwich trustee of statutory class of next of kin to Leftwich v. Cnty. of Dakota*, 9 F.4th 966, 972 (8th Cir. 2021) (quoting *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016)).

Carter does not point to any "official policy" causing the alleged violation of her Equal Protection rights. *See Corwin*, 829 F.3d at 700 (stating that a policy "is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters," and noting that the plaintiff failed to allege "an official, adopted policy"). Nor does she plead any facts plausibly suggesting that Douglas County has an "unofficial custom" of creating a work environment that discriminates against African American women. To plead the existence of an "unofficial custom," Carter must plausibly allege the following:

> "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the [county's] employees; (2) deliberate indifference to or tacit authorization of such conduct by the [county's] policymaking officials after notice to the officials of that misconduct; and (3) that [she] was injured by acts pursuant to the [county's] custom, i.e., that the custom was a moving force behind the constitutional violation."

*Meier v. St. Louis, Missouri, City of*, 934 F.3d 824, 828 (8th Cir. 2019) (third alteration in original) (quoting *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018)). Carter relies on Ewing's alleged conduct[2] as the basis for a custom at Douglas County. However, one government actor allegedly creating a discriminatory work environment for the plaintiff does not plausibly suggest that a governmental entity has an unconstitutional custom of fostering discriminatory work environments. *See Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 986 (8th Cir. 2016) ("An unconstitutional custom or usage cannot arise from a single act."); *cf. Mick v. Raines*, 883 F.3d 1075, 1080 (8th Cir. 2018) (holding that affidavits from three detainees describing unconstitutional conduct did not establish the existence of a custom); *Brewington*, 902 F.3d at 802 (holding that two incidents of excessive force could not "be considered a pattern of widespread and pervasive unconstitutional conduct"); *Hildreth v. Butler*, 960 F.3d 420, 428 (7th Cir. 2020) ("[F]our or more incidents over varying periods—sometimes less than nineteen months—are insufficient to qualify as a widespread practice or custom."). Indeed, a contrary conclusion in this case would be akin to imposing *respondeat superior* liability on Douglas County, which is impermissible in § 1983 actions.

Carter's fallback position that the alleged work environment occurred because Douglas County failed to train its employees also falls short. "A [local governing body's] culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Carter merely alleges that "the acts complained [of] resulted from a failure to train." Filing 8 at 12. This vague, speculative, and conclusory allegation does not plausibly state that Douglas County failed to train its employees or caused the alleged Equal

---

[2] The Amended Complaint does not allege, and Carter does not argue, that Ewing is a policymaker for employment practices at Douglas County.

Protection violation. *See Richardson*, 2 F.4th at 1068 ("[C]onclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable."). The Amended Complaint does not explain how Douglas County has failed to train its employees or why the failure to train caused the alleged violation of her Equal Protection rights.

Carter has not plausibly alleged that Douglas County had an official policy, had an unofficial custom, or failed to train its employees. Her Equal Protection claim against Douglas County is dismissed.[3]

### C. Equal Protection Claim Against Ewing

Carter also claims that Ewing, in his individual capacity, violated her rights under the Equal Protection clause by "creating or fostering a racially [or sexually] discriminatory work environment by treating African American women adversely different." Filing 8 at 12. In support, Carter references Ewing placing her on a "Developmental Plan" and her eventual termination. Filing 12 at 4–5. Ewing argues that Carter has failed to plausibly allege that she was treated differently than similarly situated male employees or employees of other races. Filing 10 at 3. The Court understands Ewing's argument to be an implicit attack on the plausibility of Carter's pleading that Ewing acted with a discriminatory motive.

"The Equal Protection Clause generally requires the government to treat similarly situated people alike." *In re Kemp*, 894 F.3d 900, 909 (8th Cir. 2018) (quoting *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994)). "Absent evidence of direct discrimination, courts apply the

---

[3] Because the official-capacity claim against Ewing is the same as a claim against Douglas County itself, the failure to plausibly plead an Equal Protection claim against Douglas County disposes of the Equal Protection official-capacity claim against Ewing. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

*McDonnell Douglas* burden-shifting analysis to claims of employment discrimination under the Equal Protection Clause." *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1014 (8th Cir. 2013). A *prima facie* case of discrimination requires "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Id.* (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002))). The elements of a *prima facie* case do not need to be pleaded; rather, they are "part of the background against which a plausibility determination should be made" and "may be used as a prism to shed light upon the plausibility of the claim." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (quoting *Rodriguez–Reyes v. Molina–Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013)). Nevertheless, the plaintiff must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 796 (8th Cir. 2021) (emphasis removed) (quoting *Blomker*, 831 F.3d at 1056).

Ewing's Motion focuses on the lack of allegations in Carter's Amended Complaint plausibly suggesting that he treated Carter differently because of her sex or race. Whether pursued under the Equal Protection clause or Title VII, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 739 (8th Cir. 2013) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 153 (2000)). One method[4] of pleading intentional race or sex discrimination is the plaintiff plausibly alleging that she was treated differently than employees of other sexes or races "who were similarly situated to her."

---

[4] The Amended Complaint does not allege that Ewing made racist or sexist comments or otherwise alluded to Carter's race or sex in making his decisions, which are other common ways of pleading intentional discrimination. *See Warmington*, 998 F.3d at 797 n.3 (explaining that direct evidence of discrimination "most often comprises remarks by decisionmakers that reflect, without inference, a discriminatory bias") (quoting *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 861 (8th Cir. 2009)); *Duckworth v. St. Louis Metro. Police Dep't*, 491 F.3d 401, 406 (8th Cir. 2007) (holding that statements referring to gender as the reason for certain employment actions was "direct evidence of gender discrimination" in an Equal Protection claim).

9

*Adam & Eve Jonesboro, LLC v. Perrin*, 933 F.3d 951, 959–60 (8th Cir. 2019) (quoting *Kemp*, 894 F.3d at 909); *see also Kemp*, 894 F.3d at 909 ("Absent a threshold showing that she is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim."). These so-called "comparators" must be "similarly situated in all relevant respects." *Lucke v. Solsvig*, 912 F.3d 1084, 1087 (8th Cir. 2019) (quoting *Young v. Builders Steel Co.*, 754 F.3d 573, 578 (8th Cir. 2014)). When the issue is disparate treatment in discipline, the comparators "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 925 (8th Cir. 2014) (*Burton v. Arkansas Sec'y of State*, 737 F.3d 1219, 1229 (8th Cir. 2013)).

  Carter points to the allegation that she "was the only employee who received a Developmental Plan as an official course of adverse employment action" to support her claim of disparate treatment. Filing 8 at 4. To the extent that Carter is attempting to allege a "class of one" Equal Protection claim, she fails to cross the starting line. As Ewing correctly notes, the Supreme Court has categorically barred class-of-one Equal Protection claims "in the public employment context." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 605 (2008). This assertion also does not plausibly allege that similarly situated employees of other races or sexes were treated more favorably. The Amended Complaint does not explain if the other employees held similar positions to Carter's, engaged in similar conduct, dealt with Ewing, or even if they were of different sexes or races than her. Her allegation "upon information and belief" that she was the only employee who received a Developmental Plan that ultimately led to her termination does not plausibly suggest disparate treatment based on a protected characteristic. *See Jones v. Douglas Cnty. Sheriff's Dep't*, 915 F.3d 498, 500 (8th Cir. 2019) (holding that an allegation "on information and belief"

10

that "the open position was filled with a male candidate" failed to plausibly plead a sex-discrimination claim); *Kemp*, 894 F.3d at 910 (holding that an allegation that the plaintiff was "afforded less favorable terms and conditions of his employment with the State of Arkansas on account of his race, than similarly situated white judges" was "insufficient to establish racial animus"); *Hager*, 735 F.3d at 1015 (holding that an allegation that the plaintiff "was discharged under circumstances [similarly] situated nondisabled males . . . were not" failed to plead an employment-discrimination claim); *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010) (holding that allegations that the plaintiff was treated differently than white employees and that another white employee was not disciplined "despite having 'outside business involvements'" failed to plead a race-discrimination claim). Therefore, Carter has failed to state a plausible Equal Protection claim against Ewing.[5]

---

[5] Although the Amended Complaint does not identify them as the basis of her Equal Protection claim, and Carter makes no mention of them in her brief, the Court has reviewed the allegations Carter makes in her EEOC and NEOC charges about Ewing's treatment of her compared to Jane Alexander, Chief Deputy at the Douglas County Treasurer's Office, which she attached to the Amended Complaint. Filing 8-1 at 2. These allegations do not plausibly allege racial discrimination given their vague and conclusory nature. *See Richardson*, 2 F.4th at 1068. Further, Carter fails to plead any facts demonstrating that Alexander is an appropriate comparator. *See Lucke*, 912 F.3d at 1087. For example, there are no allegations establishing that Alexander and Carter are similarly situated in all relevant respects, especially because the charges suggest Alexander is higher up the Douglas County Treasurer's Office hierarchy than Carter. *See Ebersole*, 758 F.3d at 925 (outlining that comparators must "have been subject to the same standards" and "engaged in the same conduct"). Moreover, any alleged rude treatment of Carter by Ewing outlined in the charges is not sufficiently adverse. *See Sutherland v. Missouri Dep't of Corr.*, 580 F.3d 748, 752 (8th Cir. 2009) ("Petty slights and minor annoyances in the workplace, as well as personality conflicts and snubs by co-workers, are not actionable."). Nor do these allegations connect the alleged rude treatment to Carter's race or sex. *See Hager*, 735 F.3d at 1014.

## IV. CONCLUSION

For these reasons, the Court dismisses Carter's Equal Protection claim. Accordingly,

IT IS ORDERED:

1. Defendants' Motion for Partial Dismissal, Filing 11, is granted; and

2. Patricia J. Carter's Equal Protection Claim is dismissed.

Dated this 26th day of May, 2023.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge